Daniels, J.
The action was by the plaintiff as a judgment creditor of Alice Hazzard, whose execution against property had been returned unsatisfied, to set aside as fraudulent a general assignment of her property made by her for the benefit of her creditors. It was previously tried when a judgment was recovered dismissing the plaintiff’s complaint. This was afterwards reversed on appeal to the general term, and a new trial ordered. The case as it was then considered and decided will be found reported in 31 Hun, 282. Upon the trial resulting in the judgment from which the appeal has been brought evidence was given upon which it was claimed that that the infirmity in the assignment upon which the preceding judgment had been reversed, was explained and removed. This evidence consisted chiefly of an agreement executed by the firm of Graham & Aitken, declaring that they held the mortgage of $1,000 upon the property in East Hew York as security for any debt due, or to become due, to the firm for goods and merchandise sold to the assignor, or her husband as her agent, or for moneys then or afterwards to become due. But this instrument was not within the knowlege of the assignor at the the time when she made and delivered her general assignment. It was made in March, 18'T'T, while the assignment was not executed until December, 1880, when this agreement appears by the evidence to have-been lost sight of and forgotten by the assignor. It did not, therefore, influence her in the least in the disposition made of her property by the assignment and the schedules afterwards forming a part of it, but they were made en *64 tirely independent of the statements contained in this instrument. And from the manner in which they were executed, delivered and filed, it was considered when the case was before this court on the preceding occasion that the evidence indicated the assignment to have been made with intent to hinder, delay or defraud creditors.
The fact that it might have been otherwise, if the assignor had acted upon the obligations expressed in this instrument does not control the case, for the assignment is to be sustained or condemned according to the intent of the assignor at the time when it was made and delivered. For the statute has provided that every assignment or conveyance in writing or otherwise of any estate or interest in lands or in goods or things in action, or of any rents or profits issuing therefrom and every charge upon lands, goods or things in action, or upon the rents or profits thereof made with intent to hinder, delay, or defraud creditors or other persons, etc., shall be void as against the persons so hindered, delayed or defrauded. 3 Rev. Stat., [6th ed.], 145, § 1. And the plaintiff is a person who was hindered, delayed or defrauded by the mortgage intended to be continued as a lawful incumbrance upon the property described in it. It is, upon the intent alone, that the statute has empowered the creditor to proceed, and not upon the failure, or success of the party in carrying the intent into execution. And as this instrument was not within the knowledge or information of the assignor at the time when the assignment was executed and delivered by her or when the schedules were made or filed it could not very well affect the intent with which those acts were done.
At the time when the assignment was executed the judgment debtor was owing the firm of Graham & Aitken the sum of $512.78 for goods and merchandise. But this was not in the mind of the assignor in any manner connected wdth the $1,000 mortgage which had been executed and delivered to William Graham, who was a member of that firm. And by the assignment the firm was preferred for the payment of this debt after the payment of the costs charges and expenses of making, executing and carrying into effect the assignment itself. And in addition to that preference the mortgage by the schedule was stated to be a debt owing by the assignor to William Graham, “partly for goods, wares and merchandise and partly for money owed.”
This is described as a debt due to Graham himself in the the sum of $1,000 while no such indebtedness in fact existed, nor did the assignor owe either himself or his firm anything for money loaned. Before the assignment, money had been loaned by the firm to the assignor to reheve her stock from *65 an attachment, but according to the evidence of Mr. Graham,, which was not contradicted, the only debt owing to the firm at the time of the assignment was that owing for the goods, which was made the subject of this preference. For money loaned or advanced, the assignor was not indebted to the firm. That must consequently have been refunded prior to the time when the assignment was made. If the case could be relieved from the imputation of a fraudulent intent to the extent of the indebtedness from the assignor to the firm of Graham & Aitken, that would still leave the amount of $487.27 for which the assignor was in no respect owing or indebted upon the mortgage. So far it was no possible encumbrance, upon her property, and it could not be made so or so regarded, by reason of the fact that Graham & Aitken had previously loaned their note to the assignor for the sum of $715.55, which she had procured to be discounted, for that was not within the language, or effect, of the instrument made by the firm on the 10th of March, 1877. They had advanced nothing whatever upon the note, and the obligation of the assignor consisted solely in her duty to protect them against liability upon it at the time when it should become due which was not until the 4th of January, 1881. This note in like manner with the indebtedness itself, was preferred in the assignment, and in no way in the mind or intent of the assignor connected with or secured by the mortgage. But as her estate was disposed of at the time of the assignment this mortgage was stated as a distinct and separate encumbrance upon the property unconnected with any indebtedness preferred by the assignment. In her mind the two things appeared to have been distinct, as well as, distinguished for she preferred the firm of Graham & Aitken for their indebtedness and the note they had loaned her and still declared the property included in the mortgage to be hable to William Graham for this sum of $1,000. That this was no oversight on her part appears further by the inventory of her estate, in which the property in East Hew York was placed at a cost of $2,500, subject to two mortgages, one of $1,000 to Daniel McGowen, and the other of $1,000 to William Graham.
The assignor was not relieved from the imputation of a fraudulent intent in this disposition of her property by the evidence given tending to show that this land was worth but little, if anything, beyond the first incumbrance upon ifc, together with the/taxes and assessment against it. Ho such qualification of her statements was contained either in the assignment or the schedules, but in that including her property she stated that it contained a full and true in *66 ventory of all her estate and the incumbrances existing thereon, and in that relating to her indebtedness -she unqualifiedly asserted the fact that she was indebted to Graham. in the sum .of $1,000. Both these statements manifestly related to the mortgage and the bond it secured, and tended to discredit the evidence given by her upon the last trial, as well as that given by her husband, to the effect that the property was worthless beyond the first incumbrance upon it and the taxes and assessments standing against it. This evidence given by her was also in decided contrast with that which-she gave upon the first trial concerning the value of this property, which was not then in her judgment placed below the two mortgages stated as incumbrances upon it. The evidence also failed to establish the amount of the taxes and assessment against it, or to' whaLextent they remained unpaid. Estimates were given, upon this subject by the husband of the assignor, but his evidence failed to show that he was speaking from actual knowledge as to the items or amount of taxes and the assessment in arrear. He thought they aggregated in the neighborhood of three, four or five hundred dollars, but his-evidence wholly failed to establish any definite amount which could be legally charged against the property on this account. The court was, therefore, correct in declining to find that the property was worth no more than the first mortgage upon it, for the probabilities were quite decided that it did considerably exceed the amount of that incumbrance, and that of the taxes and assessment then in arrear. The testimony of Hr. Graham has no greater definiteness or reliability in this respect. He would have been unwilling to have given anything for the property beyond the first mortgage upon it, but it is apparent that his evidence, as well as that of the assignor and her husband, was given under a conscious necessity of endeavoring to relieve the case of this fraudulent imputation, and was on that account subject to a very strong qualifying consideration in the mind of the judge presiding at the trial The case was one in which the evidence indicated an effort on the part of the assignor to subject the property to encumbrance to such an extent as to induce the unpreferred creditors to believe that nothing could be derived from it by them for the payment of their debts. In great part the encumbrance was in fact fictitious, and as the transactions of her business were known to the assignor at the time when the assignment and schedules were made, the mortgage was wholly so, for she was not then aware of any right on the part of Graham & Aitken to hold it as a security for their firm indebtedness amounting to this sum of $512.23. And from these facts the conclusion of the court *67 that the assignment was in this respect made to hinder, delay or defraud the creditors of the assignor, was very well supported.
It has been insisted that this conclusion is at variance with what was held in Kavanagh v Beckwith (44 Barb., 192), where the amount of a preferred indebtedness was overstated in the assignment. But it appeared thero to have been the result of a mistake which was corrected in the inventory afterwards made, rebutting as chat did, the inference of any fraudulent intent. In this case no such correction was at any time made. The assignor had time to prepare her schedules with deliberation and accuracy, and it is in what she did in their preparation that this fraudulent intent on her part was disclosed. That was not corrected neither was any effort made for its explanation until after this action had been first tried and a. new trial had been ordered in it.
The plaintiff presented proof of his indebtedness under the assignment, and upon that fact it has been urged that he has precluded himself from asserting its legal invalidity. But as he has derived no benefit, whatever, from or through the assignment, this position cannot be maintained. The rule relied upon has proceeded no further than to preclude a party who has derived some actual benefit under an instrument from afterwards disaffirming it. Babcock v. Bill, 43 Barb., 577; Haydock v. Coope, 53 N. Y., 68.
It proceeds upon the principle that a party should not enjoy an advantage under an instrument, and at the same time insist upon its invalidity. It has no application to this case.
A large number of exceptions were taken, during the trial, to evidence which was received and also to evidence excluded by the court, but no special ruling has been pointed out as erroneous. The exceptions, on the contrary, have all alike been inserted in and referred to by the points, whether plausible or entirely devoid of every vestige of legal foundation. And for that reason they might not improperly be all disposed of as not worthy of special consideration from the court, as long as they do not seem to have been so regarded by the counsel. But for their disposition, it may very well be said that the exclusion of the statement of Mr. Graham that the mortgage was held as a legal security for everything, was in no way erroneous, for the statement would have been no more than his judgment or opinion upon this controverted subject, and whatever the rights of his firm were they were defined in the written instrument. Other litigation had taken place concerning this assignment in which the assignee proved to be successful. But proof of that litigation was entirely irrelevant *68 in this case, for the plaintiff was not a party to it and had the legal right to have his controversy determined upon the evidence applicable to this particular case. There was no ground for controversy -as to the circumstances under which the discharge of the mortgage was finally given by Graham. There was no consideration for it, no money was paid to him, or property delivered to him for that, but he simply received the fifty per cent under the assignment which his firm were entitled to because of their debt contained in it. As the trial took place the objections urged against the assignment arose out of the statement of this mortgage as a valid encumbrance upon the property to the extent of the amount mentioned in it. And because the plaintiff had alleged in his complaint other grounds for setting aside the assignment not attempted to be supported by evidence, it was not competent or relevant for the defendants to prove that in other respects the assignment and schedules were unobjectionable. They were to be inferred to be so, as long as no evidence assailing them was given upon the trial. The court, therefore, was correct in excluding ¿he evidence tending to prove that the assignment in other respects had not been fraudulently executed. Neither was there error in excluding the questions put to the assignor and her husband concerning the intent of the assignor, for she was permitted to swear that she had no intent to hinder, delay, or defraud creditors, and that the assignment was made in good faith, and that included the entire ground over which her testimony as to her intention was entitled to be received. It was not important what took place between herself and her counsel, oi between her husband and the counsel, concerning the assignment and the schedules,'as long as no proof was offered beyond that which was received explanatory of the manner in which the statements concerning this mortgage were made a part of her schedules. As to that part of the case, which was the real controversy between the parties at the trial, all the evidence pertinent to it and offered on behalf of the defendants was received by the court, and after hearing and considering that, it was concluded that this assignment had in part resulted from a fraudulent intent on the part of the assignor. The witnesses were seen and heard by the tribunal before which the trial took place. The statements made by them, as well as their respective interests in the subject-matter of the controversy, were fully considered and determined, and that determination this court has no right to set aside, even though 'it might have been obliged to have supported a different judgment if that had been deemed to be warranted by the circumstances. No ground of error has been found in the case which would *69 justify any interference with this result, and the judgment which has" been recovered should be affirmed, with costs.
The appeal in the case of Lewis Mayer and others, against the same defendants, depends upon the same evidence, except that their claim was not made the subject of proof under the assignment. And as the judgment in the other case should be affirmed, the same dispositio should be made of the appeal in this action.
Macomber and Brady, JJ., concur